

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

April 26, 1968

Mr. Harry B. Kelton, Director
Texas National Guard
    Armory Board
Austin, Texas   78711

Dear Mr. Kelton:

Opinion No. M-225

Re: Whether certain available
    funds of the Texas National
    Guard Armory Board, either
    in the State Treasury or in
    banks be legally disbursed
    as cash consideration for
    lands to be acquired at
    Camp Maxey.

You have requested an opinion as to whether certain funds in the State Treasury or in banks may be expended for the purpose of acquiring land by the Texas National Guard Armory Board. You state in your letter as follows:

"In consummating an exchange of lands in the Camp Maxey area with the Corps of Engineers, as provided in House Bill No. 641, Acts, 1967, 60th Legislature, we anticipate further land transactions with private land owners in the acquisition of approximately 610 acres which may require the Armory Board to disburse some cash consideration. Based on land values established and used in exchanges with the Corps of Engineers a total cash consideration should not exceed $50,000.00.

"In addition to tracts of land acquired by the Armory Board from the Federal Government in exchange for Camp Maxey land there will be a cash consideration of $257,806.60 which we shall

deposit in the State Treasury as provided by
Article 5931-9 and 5931-10 of House Bill No.
406, Acts, 1967, 60th Legislature.  In your
opinion could we legally deposit such proceeds
to other than the State Treasury?

". . .

"In your opinion, could any of our available
funds either in the State Treasury or in banks
be legally disbursed as cash consideration for
lands to be acquired at Camp Maxey?"

Articles 5931-9 and 5931-10, Vernon's Civil Statutes,
as amended by House Bill No. 406, Acts 60th Legislature, Regular
Session 1967, ch. 186, p. 415, at pages 419 and 420, read as fol-
lows:

"Art. 5931-9.  Transfers and sales.

"The board may receive from the Adjutant
General state-owned National Guard Camps and
all land and improvements, buildings, facilities,
installations, and personal property in connection
therewith and administer the same or transfer it
and/or any of the board's other property to the
Board of Control for sale, or make proper disposal
of such property otherwise when designated by the
board and the Adjutant General as 'Surplus' and
when in the best interest of the Texas National
Guard, its successors or components.  The Armory
Board and the Board of Control are further au-
thorized to remove, dismantle, and sever, or au-
thorize the removal, dismantling, and severance
of any of said property to accomplish the above
purposes.  All of such property so designated for
sale, shall, when transferred by the Armory Board,
be sold by the Board of Control to the highest
bidder for cash and in the manner provided by
law for the sale of property belonging to the
state which is no longer needed, and all funds

received from such sale shall be deposited in the State Treasury to the credit of the Texas National Guard Armory Board for the use and benefit of the Texas National Guard or their successors or components; provided, however, that none of these funds may be expended except by legislative appropriation.

"Article 5931-10. Conditions requiring reservation of mineral interests.

"Any sale or deed made pursuant to the terms of this Act shall reserve unto the State of Texas a one-sixteenth mineral interest free of cost of production; provided, however, that the board shall be authorized to reconvey to the original grantor or donor all rights, title, and interests, including mineral interests, to all or any part of the lands conveyed by such grantor or donor, and the board shall further be authorized, upon a negotiated basis at fair market value, to convey to such original grantor or donor improvements constructed on the land to be reconveyed. All funds derived from any such sales shall be deposited by the board in the State Treasury, as hereinbefore provided with regard to other funds derived from other authorized sales."

Article 5931-5, as amended by House Bill No. 406, supra, p. 416, provides, in part, as follows:

"Art. 5931-5. Specific powers.

"The board shall possess but is not limited to the following powers:

". . .

"(6) to acquire by gift or purchase, for use as building sites or for any other purposes

-1080-

deemed by said board to be necessary in connection with or for the use of units of the Texas National Guard, property of any and every description, whether real, personal, or mixed, . . ." (Emphasis added.)

Sections 1 and 2 of House Bill No. 641, Acts 60th Legislature, Regular Session 1967, ch. 275, p. 661, provide:

"Section 1. The Texas National Guard Armory Board is hereby authorized to convey by special warranty deed to the Corps of Engineers of the United States Army all rights, title and interests in all or any part of the lands at Camp Maxey, Lamar County, Texas, and to accept from the Corps of Engineers acting for the United States Army conveyances of the lands to be received in exchange and to be used for the training of units of the Texas National Guard.

"Sec. 2. The Texas National Guard Armory Board is further authorized to buy, sell, convey and exchange all rights, title and interests, including mineral interests, in all or any part of the lands in Camp Maxey, including such lands hereafter acquired in exchange from the Corps of Engineers of the United States Army; provided such lands received or conveyed are for the purpose of consolidating or joining the various tracts within a common perimeter to reduce or eliminate isolated privately owned tracts that would require the rights in ingress and egress at Camp Maxey."

The current General Appropriation Act for the year ending August 31, 1968, (Senate Bill No. 15, Acts 60th Legislature, Regular Session, p. 2152) contains the following appropriation to the Texas National Guard Armory Board:

"There is hereby appropriated to the Texas National Guard Armory Board all funds which have

been or may be derived from sales of State-owned National Guard camps and other property owned by the Texas National Guard Armory Board and of land, improvements, buildings, facilities, installations and personal property in connection therewith, as authorized by House Bill No. 406, Acts, 1967, 60th Legislature.  Such funds shall be expended by the Texas National Guard Armory Board for the use and benefit of the Texas National Guard for one or more of the following purposes: (1)  As a participating fund in the construction of armories financed in part by the United States Government; or (2)  As a construction fund to be used by the Armory Board; or (3)  As a debt-servicing fund as provided in House Bill No. 406, Acts, 1967, 60th Legislature, Regular Session.  Provided, however, that all such funds as are not actually used for the purposes hereinbefore specified shall remain on deposit with the State Treasurer to the credit of the Texas National Guard Armory Board for the use and benefit of the Texas National Guard, their successors or components, as provided in House Bill No. 406, Acts, 60th Legislature.  There is hereby re-appropriated to the Texas National Guard Armory Board all sums refunded to said Board from any source when such funds were originally expended for any of the purposes enumerated in Items 1 through 5 above.  Such re-appropriated funds may be expended for any of the purposes enumerated in Items 1 through 5 above."

Subdivision 6 of Article 5931-5 specifically authorizes the Texas National Guard Armory Board to acquire by purchase property of any and every description whether real, personal or mixed; therefore, the board has the authority to acquire by purchase the land described in your request.

The Legislature specifically provided that funds derived from sales of state-owned National Guard camps and other property owned by the Texas National Guard Armory Board "shall remain on deposit for the use and benefit of the board."  The Legislature

did not appropriate monies to the board for the all inclusive purpose of carrying out the specific powers granted the board by House Bill No. 406. On the contrary, the Legislature limited the purposes for which the appropriation could be expended to three (3) specific purposes, namely: "(1) As a participating fund in the construction of armories financed in part by the United States Government; or (2) As a construction fund to be used by the Armory Board; or (3) As a debt-servicing fund as provided in House Bill No. 406, Acts, 1967, 60th Legislature, Regular Session."

The acquisition of land is not "a participating fund in the construction of armories;" not "a construction fund to be used by the Armory Board;" and is not "a debt-servicing fund." Therefore, such monies have not been appropriated for the purpose of acquiring land. The phrase "shall remain on deposit for the use and benefit of the board" does not constitute an appropriation; rather, such language prevents such monies from reverting to the General Revenue Fund of the state. You are, accordingly, advised that monies in the State Treasury may not be expended for the purchase of land except as a necessary incident to the construction of armories. Since the board is specifically authorized by the provisions of Subdivision 6 of Article 5931-5 to acquire land by purchase, the board may expend for the purchase of land monies in its custody and control so long as such monies are not in the State Treasury.

### S U M M A R Y

Proceeds received by the Texas National Guard Armory Board in consummating an exchange of land in the Camp Maxey area are to be deposited in the State Treasury. Such monies are not appropriated by the Legislature for the purchase of land and, therefore, none of the appropriated funds may be expended for such purpose. However, monies under the control of the Board not in the State Treasury may be expended for the purchase of land.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
W. V. Geppert
Roger Tyler
John Grace
Ray McGregor

A. J. CARUBBI, JR.
Executive Assistant